IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| ROBERT HART, | : | Case No. 1:23-cv-12 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| THE GENERAL ELECTRIC COMPANY, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## ORDER AND OPINION

This case is before the Court on Defendant General Electric Company's Motion to Dismiss Plaintiff's Complaint (Doc. 5), Defendant UAW Local 647's Motion to Dismiss First Amended Complaint (Doc. 6), and Plaintiff Robert Hart's Motion to Remand (Doc. 8). Each motion has been fully briefed. (*See* Docs. 10-16.) Thus, these matters are ripe for review.

For the reasons below, Defendant General Electric Company's Motion to Dismiss Plaintiff's Complaint (Doc. 5) is **DENIED**, Defendant UAW Local 647's Motion to Dismiss First Amended Complaint (Doc. 6) is **GRANTED**, and Plaintiff Robert Hart's Motion to Remand (Doc. 8) is **DENIED**.

## FACTS AS ALLEGED

Plaintiff Robert Hart began working for Defendant The General Electric Company ("GE") as a machinist in June 2019. (Am. Compl., Doc. 2, ¶ 19.) While employed at GE,

Hart was a member of Defendant United Auto Workers Local 647 ("UAW"). (*Id.* at ¶¶ 4-5, 28-29, 75-76.) Hart is African American. (*Id.* at ¶ 21.)

Sometime in late 2020 or early 2021, Hart's Caucasian coworker took out the contents of Hart's toolbox and kicked them around on the ground. (Am. Compl., Doc. 2, ¶ 23.) Hart reported the incident to a GE supervisor and a UAW steward. (*Id.* at ¶¶ 29-30.) Hart maintains that GE failed to investigate the incident and UAW failed to file a grievance related to the incident. (*Id.* at ¶¶ 51-66.)

A few months later, GE suspended Hart pending an investigation into alleged misconduct. (Am. Compl., Doc. 2, ¶¶ 67, 74, 82.) Hart requested that UAW represent him in GE's investigation, but UAW declined and otherwise failed to protect Hart's interests. (*Id.* at ¶¶ 75, 78.) On September 20, 2021, GE terminated Hart's employment, as GE discovered that Hart had falsified work documents. (*Id.* at ¶¶ 80-96.) Hart maintains that Caucasian GE employees had engaged in similar misconduct but had received no discipline. (*Id.* at ¶¶ 103-173.) Following Hart's termination, UAW failed to file any grievances related to the termination. (*Id.* at ¶¶ 177-79.)

**PROCEDURAL POSTURE**

On December 2, 2022, Hart commenced the instant action in the Hamilton County Court of Common Pleas. (*See* Notice of Removal, Doc. 1.) Hart alleged against Defendants claims of race discrimination in violation of Ohio Revised Code § 4112.01 *et seq.* and retaliation in violation of Ohio Revised Code § 4112.02(I). (*Id.* at Pg. ID 19-20; Am. Compl., Doc. 2, ¶¶ 207-226.)

On January 6, 2023, GE removed the action to this Court, which UAW consented

2

to. (Notice of Removal, Doc. 1.) In the Notice of Removal, GE maintains that this Court has federal question jurisdiction because Hart's state law claims are preempted by § 301 of the Labor Management Relations Act ("LMRA"). (*Id.*)

Thereafter, GE and UAW filed separate motions to dismiss. (*See* GE's Motion to Dismiss, Doc. 5; UAW's Motion to Dismiss, Doc. 6.) At the same time, Hart moved to remand. (*See* Motion to Remand, Doc. 8.) The Court will first consider Hart's Motion to Remand (Doc. 8).

## LAW & ANALYSIS

### I. Motion to Remand

On a motion to remand, the question is whether the district court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). The party removing the action to federal court bears the burden of showing that the district court has original jurisdiction over the action. *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir. 2000). Courts construe the removal statute strictly in favor of state court jurisdiction, *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941), and resolve doubts in favor of remand. *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999).

The removing Defendants contend that this Court has subject matter jurisdiction over this matter based on federal question jurisdiction. (*See* Notice of Removal, Doc. 1, Pg. ID 2.) Federal question jurisdiction exists in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. An action "arises under" federal law if: (1) "federal law creates the cause of action" or (2) "the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell*

3

*Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808-09 (1986).

The presence or absence of federal question jurisdiction is generally governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Hudak v. Hills*, 566 F. Supp. 3d 771, 780 (N.D. Ohio 2021). "This makes the plaintiff the master of the complaint; the plaintiff may simply avoid federal jurisdiction by relying exclusively on state law." *Gentek Bldg. Prods. v. Sherwin-Williams, Co.*, 491 F.3d 320, 325 (6th Cir. 2007) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)). "Accordingly, if the plaintiff chooses to bring a state law claim, that claim cannot generally be recharacterized as a federal claim for the purposes of removal." *Roddy v. Grand Trunk W. R.R. Inc.*, 395 F.3d 318, 322 (6th Cir. 2005) (quotation omitted). The "mere presence of a federal issue in a state cause of action does not automatically confer federal question jurisdiction." *Merrell Dow*, 478 U.S. at 813.

One exception to the well-pleaded complaint rule is complete preemption. The Supreme Court has recognized this exception when the complaint, on its face, alleges only state law claims but those claims also state a cause of action under a federal statute that "completely preempts" an area of state law. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 468 n.11 (6th Cir. 2002) (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987)). "[W]hen a federal statute wholly displaces the state law cause of action through complete pre-emption, the state claim can be removed." *Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 612 (6th Cir. 2013) (citations omitted).

Defendants removed this action on the basis that § 301 of the LMRA completely

preempts Hart's state law claims. (Notice of Removal, Doc. 1, Pg. ID 2.) Hart argues against preemption in his motion to remand. (*See* Motion to Remand, Doc. 8.) But the Court need only consider the claims against UAW to see that removal was proper.

### a. Claims Against UAW

Hart brings state law claims for discrimination and retaliation against UAW. (Am. Compl., Doc. 2, ¶¶ 207-226.) UAW maintains that these claims are completely preempted by § 301 because all of the allegations against UAW implicate the duty of fair representation. (*See* Notice of Removal, Doc. 1, Pg. ID 2-3; UAW's Response in Opp., Doc. 13, Pg. ID 105-07.)

"[P]reemption by [a] Union's duty of fair representation and preemption by § 301 of the LMRA are distinct legal doctrines." *Krowiak v. BWXT Nuclear Operations Grp., Inc.*, No. 1:18-cv-629, 2018 U.S. Dist. LEXIS 175991, at *17 (N.D. Ohio Oct. 11, 2018) (citation omitted). "Section 301 generally governs suits for violations of contracts between an employer and a labor organization." *In re Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, Local No. 173*, 983 F.2d 725, 728 (6th Cir. 1993). In contrast, "the duty of a Union to furnish fair representation arises under [§] 9(a) of the LMRA." *Eggelston v. Nexteer Auto. Corp.*, No. 16-cv-13368, 2017 U.S. Dist. LEXIS 7991, at *10-11 (E.D. Mich. Jan. 20, 2017).

When a plaintiff's allegations fall within the scope of a union's duty of fair representation, federal labor law preempts a state law claim based on those allegations. *See, e.g., Maynard v. Revere Copper Prods., Inc.*, 773 F.2d 733, 735 (6th Cir. 1985) ("The doctrine of preemption is firmly established in labor law. The duty of fair representation relates to an area of labor law which has been so fully occupied by Congress as to

5

foreclose state regulation."). To determine whether a state law claim is preempted, a court must ask whether that claim alleges conduct that falls within a union's duty of fair representation. *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). That is, the union's duty "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id.*

The duty of fair representation "applies in all contexts of union activity, including contract negotiation, administration, enforcement, and grievance processing." *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 619 (6th Cir. 2010). A plaintiff alleging a breach of the duty of fair representation must show that a union's actions were "arbitrary, discriminatory, or in bad faith." *Id.* To demonstrate that a union engaged in discrimination, a plaintiff must "adduce substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." *Amalgamated Ass'n v. Lockridge*, 403 U.S. 274, 301 (1971). And, "[a] union acts in bad faith when it acts with an improper intent, purpose, or motive encompassing fraud, dishonesty, and other intentionally misleading conduct." *Merritt*, 613 F.3d at 619 (quotations omitted).

Hart's discrimination claim against UAW implicates UAW's performance of its duty of fair representation. Hart's discriminatory allegations arise against UAW for its failure to adequately represent Hart in GE's investigation, as well as UAW's failure to file grievances on his behalf. (Am. Compl., Doc. 2, ¶¶ 78, 80-96, 177-79.) Put another way, Hart's discrimination allegations against UAW all relate to UAW's failure to adequately represent Hart because of his race. These allegations "principally raise questions about [UAW's] performance of its duty of fair representation." *Eggelston*, 2017 U.S. Dist. LEXIS

6

7991, at *12-13.

Similarly, Hart's retaliation claim against UAW falls squarely within UAW's duty of fair representation. Hart alleges that after he reported discriminatory conduct, UAW retaliated against Hart by declining to represent him in the investigative process and failing to file any grievances on his behalf. (Am. Compl., Doc. 2, ¶¶ 219-24.) In essence, Hart asserts that UAW failed to fairly and adequately represent him in retaliation for his claims of race discrimination. To prevail on such a claim, Hart would have to prove that UAW acted in bad faith when engaging in its union activity. Thus, Hart's retaliation claim against UAW implicates UAW's duty of fair representation.

Hart argues that his claims against UAW are not preempted because they are based on independent civil rights under Ohio law and do not reference any collective bargaining agreement ("CBA"). (Motion to Remand, Doc. 8, Pg. ID 72-73.) To be sure, the duty of fair representation "does not depend on the existence of a [CBA]." *Pratt v. United Auto., Aerospace & Agric. Implement Workers of Am.*, 939 F.2d 385, 388 (6th Cir. 1991) (citation omitted). "Rather, it flows from the union's statutory position as exclusive representative and exists both before and after the execution of an agreement." *Id.* "This kind of claim, a failure to represent fairly, is essentially a matter of federal law." *Jones v. Truck Drivers Loc. Union No. 299*, 838 F.2d 856, 861 (6th Cir. 1988) (finding the plaintiffs' claim of sex discrimination brought under Michigan Civil Law § 37.2204 completely preempted).

Both of Hart's claims against UAW are encapsulated by the duty of fair representation. Federal law therefore preempts Hart's claims against UAW. *See Maynard*,

at 733. Thus, for Hart's claims against UAW, this Court has federal question jurisdiction. *Gardner*, 715 F.3d at 612.

* * *

The Court has subject matter jurisdiction over this case. The Court has federal question jurisdiction over Hart's claims against UAW. So, even if Hart's state law claims against GE are not preempted, this Court may exercise supplemental jurisdiction over those claims. *See* 28 U.S.C. § 1367(a) (When federal courts have original jurisdiction over a claim, they may also exercise supplemental jurisdiction over all other claims "so related" as to "form part of the same case or controversy."). Accordingly, this case was properly removed to this Court and Hart's Motion to Remand (Doc. 8) must be denied.

## II. Motions to Dismiss

Having determined that this case was properly removed, the Court now turns its attention to Defendants' motions to dismiss. (GE's Motion to Dismiss, Doc. 5; UAW's Motion to Dismiss, Doc. 6.) The Court will first examine UAW's motion. (*See* UAW's Motion to Dismiss, Doc. 6.)

### a. UAW's Motion to Dismiss

The Court has already determined that Hart's claims against UAW are preempted by § 9(a) of the LMRA, which establishes a union's duty of fair representation. Because Hart's claims against UAW are preempted by the LMRA, they "must either be treated as [a LMRA] claim or dismissed." *Allis-Chalmers Corp. v. Lueck*, 741 U.S. 202, 220 (1985). Here, even if the Court treated Hart's state law claims against UAW as LMRA claims, they would still be dismissed for failing to meet the LMRA's statute of limitations requirement.

8

A complaint based on a union's breach of the duty of fair representation is subject to a six-month statute of limitations period. 29 U.S.C. § 160(b). The statute of limitations begins when a plaintiff "knows or should have known of the union's alleged breach of its duty of fair representation." *Schoonover v. Consol. Freightways Corp. of Delaware*, 49 F.3d 219, 221 (6th Cir. 1995).

Hart's claims against UAW relate to UAW's failure to adequately represent Hart in GE's investigation, as well as UAW's failure to file grievances on his behalf. (Am. Compl., Doc. 2, ¶¶ 78, 80-96, 177-79.) The last incident relating to UAW's alleged misconduct occurred on September 20, 2021. (*Id*. at ¶¶ 177-79.) Hart's original complaint was filed on December 2, 2022—well over six months later. (*See* Notice of Removal, Doc. 1.) Hart has not provided any evidence to suggest that the LMRA's statute of limitations should be tolled. Thus, Hart's claims against UAW must be dismissed with prejudice because the statute of limitations bars these claims.

### b. GE's Motion to Dismiss

The Court now turns its attention to GE's Motion to Dismiss (Doc. 5). Hart brings state law claims for discrimination and retaliation against GE. (Am. Compl., Doc. 2, ¶¶ 207-226.) GE maintains that these state law claims are completely preempted by § 301 of the LMRA. (GE's Motion to Dismiss, Doc. 5, Pg. ID 51-55.) In turn, because Hart failed to meet the LMRA's statute of limitations, those claims against GE must be dismissed. (*Id*. at Pg. ID 55-56.) In response, Hart argues that his claims do not implicate § 301. (Motion to Remand, Doc. 8, Pg. ID 72-73; Hart's Response in Opp., Doc. 10, Pg. ID 85-90.)

Section 301 governs all suits related to a breach of a CBA between an employer

9

and a union. 29 U.S.C. § 185(a); *see also Smith v. Evening News Ass'n*, 371 U.S. 195, 199 (1962). The Supreme Court has found that when "resolution of a state law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as preempted by federal labor-contract law." *Allis-Chalmers*, 471 U.S. at 220. "The purpose of § 301 preemption is to promote the peaceable and consistent resolution of labor disputes by authorizing federal courts to fashion a body of uniform federal law for the interpretation of labor contracts." *Kitzmann v. Loc. 619-M Graphic Communs. Conf. of the Int'l Bhd. Of Teamster*, 415 F. App'x. 714, 717 (6th Cir. 2011) (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403-04 (1988)).

Not only does § 301 govern claims "founded directly on rights created by [CBAs]," but it also governs claims "substantially dependent on analysis of a [CBA]." *Caterpillar*, 482 U.S. at 394. The Sixth Circuit has created a two-step test for determining whether a plaintiff's claims are preempted by § 301:

> First, courts must determine whether resolving the state law claim would require interpretation of the terms of the labor contract. If so, the claim is preempted. Second, courts must ascertain whether the rights claimed by the plaintiff were created by the labor contract, or instead by state law. If the rights were created by the labor contract, the claim is preempted. In short, if a state law claim fails either of these two requirements, it is preempted by § 301.

*Kitzmann*, 415 F. App'x. at 718 (citations omitted).

### 1. Step 1: Potential CBA Interpretation Associated with Hart's Claims

"In order to make the first determination, the court is not bound by the well-pleaded complaint rule, but rather, looks to the essence of the plaintiff's claim, in order

10

to determine whether the plaintiff is attempting to disguise what is essentially a contract claim as a tort." *DeCoe v. GMC*, 32 F.3d 212, 216 (6th Cir. 1994) (citation omitted). "If the plaintiff can prove all of the elements of his claim without the necessity of contract interpretation, then his claim is independent of the labor agreement." *Id.* "Moreover, neither a tangential relationship to the CBA, nor the defendant's assertion of the contract as an affirmative defense will turn an otherwise independent claim into a claim dependent on the labor contract." *Id.*

The Court will first look at Hart's discrimination claim against GE. Under Ohio law, it is "an unlawful discriminatory practice . . . [f]or any employer, because of the race, color . . . or ancestry of any person, to discharge without just cause . . . or otherwise to discriminate against that person with respect to . . . tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev. Code § 4112.02(A). A plaintiff must prove discriminatory intent to prevail on a race discrimination claim. *Kenner v. Grant/Riverside Med. Care Found.*, 88 N.E.3d 664, 675 (Ohio Ct. App. 2017). With no direct evidence, a plaintiff may establish discriminatory intent through indirect evidence under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which was adopted by the Supreme Court of Ohio in *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rts. Comm.*, 421 N.E.2d 128 (1981).

Under the *McDonnell Douglas* framework, a plaintiff must first present a prima facie case of discrimination. *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996) (citation omitted). To establish a prima facie case of discrimination, a plaintiff must prove by a

11

preponderance of the evidence that: (1) he is a member of a protected class, (2) he suffered an adverse employment action, (3) he was qualified for the position in question, and (4) either he was replaced by someone outside the protected class or a non-protected similarly situated person was treated better. *Moody v. Ohio Dep't of Mental Health & Addiction Servs.*, 183 N.E.3d 21, 31 (Ohio Ct. App. 2021) (citations omitted). "Once the prima facie case is made, a defendant may offer any legitimate, non-discriminatory reason for the employment action, which the plaintiff may rebut by evidence of pretext." *Hartsel*, 87 F.3d at 800.

The Court need only consider whether proof of Hart's prima facie case requires interpretation of the parties' CBA. *See Howard v. Cumberland River Coal Co.*, 838 F. Supp. 2d 577, 582 (E.D. Ky. 2011) ("If LMRA preemption arises as a basis for removal, the Court's inquiry is limited to whether the proof of the plaintiff's prima facie case requires interpreting the CBA."). GE argues that the parties' CBA ensures that employees can only be terminated for "just cause," meaning that the Court will need to interpret that phrase to determine whether GE had sufficient reason to terminate Hart. (Motion to Dismiss, Doc. 5, Pg. ID 53-55.) But the elements to establish Hart's prima facie case of discrimination do not require such an interpretation. Hart alleges that GE terminated him because of his race, as shown by GE's unequal treatment between African American and non-African American employees. (*See* Am. Compl., Doc. 2.) This is enough to create a prima facie case — without reference to or interpretation of any CBA provision. *See Kenner*, 88 N.E. 3d at 676.

Of course, a potential defense to that prima facie showing is that GE had a

12

nondiscriminatory reason—a "just cause"—for terminating Hart. But this is only a defense to rebut or contradict Hart's prima facie showing—this is not an element that Hart has to prove himself. To be sure, "[i]t is irrelevant to the preemption question whether or not the employer can defend by showing it had the right under the [CBA] to do what it did." *O'Shea v. Detroit News*, 887 F.2d 683, 687 (6th Cir. 1989). GE's "argument that [it] intend[s] to make this Court interpret the [CBA] to its advantage does not bar [Hart] from bringing [his] claim that, on its face, has nothing to do with any provision of that agreement." *Reams v. Loc. 18, Int'l Union of Operating Eng'rs*, No. 3:21-cv-878, 2021 U.S. Dist. LEXIS 214006, at *7 (N.D. Ohio Nov. 5, 2021).

For those same reasons, Hart's retaliation claim does not require an interpretation of the parties' CBA. "Ohio law prohibits retaliating against an employee who has opposed any unlawful discriminatory practice or has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding or hearing." *Bowers v. Hamilton City Sch. Dist. Bd. Of Educ.*, No. CA2001-07-160, 2002 Ohio App. LEXIS 1356, at *4 (Ohio Ct. App. Mar. 25, 2022) (citing Ohio Rev. Code 4112.02(I)). To establish a prima facie case of retaliation, a plaintiff must prove that (1) he "engaged in a protected activity, (2) the defending party was aware that the claimant had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and adverse action." *Greer-Burger v. Temesi*, 879 N.E.2d 174, 180 (Ohio 2007). The same *McDonnell Douglas* burden-shifting framework discussed above applies to retaliation claims. *Id.*

As with Hart's discrimination claim, each of the retaliation elements presents

13

"purely factual questions pertain[ing] to the conduct of the employee and the conduct and motivation of the employer." *Lingle*, 486 U.S. at 407. The elements do not turn on any provision in the CBA. That GE may assert "just cause" as a defense to the retaliation claim does not trigger preemption. *See Caterpillar*, 482 U.S. at 398-99; *see also Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514, 522 (6th Cir. 2012) (Where a disability discrimination claim is "only tangentially related to the terms of the CBA and is so related only because [the plaintiff's] relationship with [the employer] is governed by the CBA," the claim is not preempted.).

Thus, Hart's claims against GE do not require the Court to interpret any provision of the CBA.

### 2. Step 2: Source of Right for Hart's Claims Against GE

Next, the Court must consider whether the rights claimed by Hart were created by the parties' CBA or by state law. GE argues that Hart's claims against it depend solely on the CBA-established right to be terminated only for "just cause." (Notice of Removal, Doc. 1, Pg. ID 2-3; GE's Motion to Dismiss, Doc. 5, Pg. ID 51-52.) The Court disagrees.

The rights being asserted by Hart are not created solely by the parties' CBA. Hart is not proving that he had a right to be terminated for "just cause." Hart is attempting to prove that GE terminated and retaliated against him because of his race. GE's obligation to not retaliate or discriminate against employees on the basis of race already exists independently of the CBA. *See Lingle*, 486 U.S. at 412 ("[T]he mere fact that a broad contractual protection against discriminatory — or retaliatory — discharge may provide a remedy for conduct that coincidently violates state law does not make the existence or

14

the contours of the state law violation dependent upon the terms of the private contract."); *see also Ivery*, 31 F. App'x at 846 ("[S]tate-law discrimination charges not premised upon duties created by the CBA are not preempted by § 301.").

Thus, the rights asserted by Hart are independent of the parties' CBA.

\*      \*      \*

Hart's state law claims against GE do not invoke the parties' CBA. Hart's claims against GE neither require interpretation of or rely on a right created by the CBA. In turn, those claims are not preempted by § 301 and the LMRA's statute of limitations does not apply. Consequentially, GE's Motion to Dismiss (Doc. 5) must be denied.

### III.   Remand to State Court

Having dismissed all of the claims against UAW, the Court must now decide how to proceed with Hart's state law claims against GE. Pursuant to 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a state law claim if the district court has dismissed all claims over which it has original jurisdiction." *Wayne Watson Enterprises, LLC v. City of Cambridge*, 243 F. Supp. 3d 908, 928-29 (S.D. Ohio 2017) (quoting 28 U.S.C. § 1367(c)(3)). "The Sixth Circuit routinely emphasizes this provision in holding that a federal court that has dismissed a plaintiff's federal law claims should not ordinarily reach the plaintiff's state law claims." *Id.* (quoting *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 454 (6th Cir. 2014)). Courts should consider principles of federalism and comity in determining whether to exercise supplemental jurisdiction, and needless decisions of state law should be avoided. *Id.*

Hart's claims against UAW—which provided this Court with federal question

jurisdiction—are dismissed. Only Hart's state law claims against GE remain. In light of the failure of Plaintiffs' claims against UAW, the Court declines to exercise its supplemental jurisdiction over the remaining state law claims against GE.

In turn, the question is whether to dismiss these remaining claims without prejudice or remand them to state court. Whether to remand or dismiss a matter is left to the discretion of the district court. *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 761 (6th Cir. 2000) (internal citations omitted). District courts should consider the values of economy, convenience, fairness, and comity when determining whether to remand the claims, rather than dismiss them. *Id.* (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988)). Hart initially filed this action in state court, only to be removed by Defendants. (*See* Notice of Removal, Doc. 1.) Having weighed this factor, as well as the relevant considerations involving judicial economy, convenience, fairness to the parties, and comity, remand is appropriate. *See McCoy v. MV Residential Prop. Mgmt., Inc.*, No. 2:14-cv-2642, 2016 U.S. Dist. LEXIS 47733, at *9-10 (S.D. Ohio Apr. 8, 2016) (remanding state law claims to state court when the plaintiff originally sought to pursue her claims in state court); *see also Wayne Watson*, 243 F. Supp. 3d at 929 (remanding state law claims to common pleas court).

## CONCLUSION

Based on the foregoing, the Court **ORDERS** the following:

1. Defendant General Electric Company's Motion to Dismiss Plaintiff's Complaint (Doc. 5) is **DENIED**;

2. Defendant UAW Local 647's Motion to Dismiss First Amended Complaint

(Doc. 6) is **GRANTED**;

3. Plaintiff Robert Hart's Motion to Remand (Doc. 8) is **DENIED**;

4. Plaintiff Robert Hart's claims against UAW Local 647 are **DISMISSED WITH PREJUDICE**; and

5. Plaintiff Robert Hart's claims against The General Electric Company are **REMANDED** to the Court of Common Pleas of Hamilton County, Ohio.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: *Matthew W. McFarland*
JUDGE MATTHEW W. McFARLAND